UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-01-GWU

JULIE P. COWAN,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.   Is the claimant currently engaged in substantial gainful activity?
     If so, the claimant is not disabled and the claim is denied.

2.   If the claimant is not currently engaged in substantial gainful
     activity, does he have any "severe" impairment or combination
     of impairments--i.e., any impairments significantly limiting his
     physical or mental ability to do basic work activities?  If not, a
     finding of non-disability is made and the claim is denied.

3.   The third step requires the Commissioner to determine
     whether the claimant's severe impairment(s) or combination of
     impairments meets or equals in severity an impairment listed
     in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

09-01  Cowan

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

2

09-01  Cowan

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

3

09-01  Cowan

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

4

09-01  Cowan

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

5

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

6

09-01  Cowan

## DISCUSSION

The plaintiff, Julie P. Cowan, a 32-year-old woman with an eighth grade education, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of a discogenic and degenerative disorder of the back.  (Tr. 14).  Nevertheless, the ALJ determined that the plaintiff was capable of a full range of "light" level exertion, and was capable of performing her past relevant work as a fast food worker.  (Tr. 15-17).  Accordingly, she was not entitled to benefits.  The Appeals Council declined to review, and this action followed.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to spinal problems, including a bulging disc in the back, spurs in her neck, and degenerative disc disease.  (Tr. 73).  At the administrative hearing, she stated that her biggest problem was her neck, which caused burning pain all the way down her spine, and also running into her arms. (Tr. 33-4).  She had been referred to a pain clinic and to physical therapy, but could not afford to go.  She stated that she felt she could lift only five pounds and had to change positions every 45 minutes.  (Tr. 36).  Reaching was also painful.  (Id.).  She denied any current problems with nerves or depression.  (Tr. 33).  She testified that she lived with her mother, and spent the day reading books and watching television, although she would also help with some housework such as dishwashing, vacuuming, and dusting.  (Tr. 40).

7

09-01  Cowan

The plaintiff submitted office notes from a chiropractor, Dr. Chad Henderson, who obtained x-rays after finding a decreased range of motion and tenderness in the cervical spine.  (Tr. 157-8).  She was instructed to use heat and ice and referred to a physician for medication.  (Tr. 159).

Shortly thereafter, the plaintiff was seen by Dr. Mohammad Afzal, who ordered MRI studies.  (Tr. 174).  A cervical spine MRI showed osteophytes at several levels, a small protrusion at C4-5 contacting the spinal cord, and marked right lateral recess stenosis making a mild impression on the cord at C5-6.  (Tr. 168-9).  A lumbosacral MRI showed central annular tears with central disc protrusions at L4-5 and L5-1, making an impression on the central thecal sac at L4-5.  (Tr. 171, 179-80).  Dr. Afzal then referred his patient to a neurosurgeon and suggested physical therapy for six weeks.  (Tr. 175).  The plaintiff was seen by Dr. Guy M. Sava, a neurosurgeon, on May 24, 2007.  (Tr. 185).  He noted that she appeared to be quite tearful and seemingly in severe pain, both in the neck and all the way down the lumbar spine.  (Tr. 186).  There was a decreased range of motion of the neck in all directions, but with normal motor strength.  (Tr. 187).  There was a full range of motion of the lumbar spine, and Dr. Sava stated that he did not appreciate any significant abnormality, although there was a paraspinal spasm.  (Id.).  The physician reviewed the cervical MRI which he felt definitely showed significant cervical spondylosis and disc protrusions.  (Tr. 188).  He noted that her symptoms radiated only down to the elbow, suggesting a C4-5 level of pathology, but the C5-6

level was much worse.  Dr. Sava recommended physical therapy prior to considering any more aggressive intervention, but doubted that she was a candidate for "any aggressive intervention."  (Id.).  He declined to prescribe any medications and referred the plaintiff back to Dr. Afzal for pain management.  (Id.).  However, after the plaintiff appeared several days later without an appointment, complaining of severe pain, Dr. Sava provided Lortab on a one-time basis and encouraged her to start physical therapy immediately.  (Tr. 183).  He also reviewed the lumbar MRI at this time and concluded that it showed minimal findings.  (Id.).

The plaintiff's further treatment included visits to Dr. Scott Stephens, whose examination findings are essentially illegible.  However, he diagnosed back pain and prescribed an anti-inflammatory as well as a muscle relaxer.  (Tr. 196-7).  The plaintiff was also seen at an emergency room with the same complaints and given an injection on at least one occasion.  (Tr. 192, 249).

In terms of functional restrictions, the only medical source to offer an opinion was a state agency physician, Dr. Carlos Hernandez, who opined on September 14, 2007 that the plaintiff was capable of lifting 50 pounds occasionally and 25 pounds frequently , with no non-exertional restrictions.  (Tr. 222-8).

The ALJ gave the plaintiff the benefit of the doubt in limiting her to "light" level exertion.  As noted in the Applicable Law section of this opinion, it is the plaintiff's responsibility to prove her own case.  Moreover, the mere diagnosis of a condition does not establish disability.  Young v. Secretary of Health and Human Services,

925 F.2d 146, 151 (6th Cir. 1990).  No treating or examining physician provided greater restrictions than found by the ALJ.

The plaintiff argues on appeal that the ALJ erroneously found that, while her medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements regarding the intensity, persistence, and limiting effect of the symptoms were not credible. (Tr. 16).  Duncan, supra.  The ALJ emphasized that the plaintiff had not been referred to surgery and had not followed through with instructions to pursue physical therapy or pain management, and had not received "undue" emergency care.  (Id.).  He also felt that her presentation at the hearing was not consistent with her allegations and that her household chores, reading, and television watching were evidence that she was able to engage in a wider range of activities than she alleged.  (Tr. 17).  While some of these activities, such as watching television, may not provide a very persuasive indication that the plaintiff's pain was not credible, a reasonable finder of fact could have concluded that a person capable of vacuuming and washing dishes did not have the extreme limitations in the use of her neck and upper extremities as alleged.  Therefore, the so-called Duncan test does not provide a basis for remand.

The plaintiff also submitted a functional capacity assessment from her chiropractor, Dr. Henderson, after the date of the ALJ's decision.  Dr. Henderson opined that she was capable of performing "light" level work, consistent with the ALJ, although with limited sitting, standing, and walking as well as certain non-

09-01  Cowan

exertional restrictions.  (Tr. 257).  In order to obtain a remand for newly submitted evidence, however, the plaintiff must show that it is both "new" and "material" and that there was "good cause" for not obtaining the evidence earlier. <u>Cline v. Commissioner of Social Security</u>, 96 F.3d 146, 148-9 (6th Cir. 1996).  In the present case, while the evidence is new, it is of dubious materiality since a chiropractor is not considered to be an acceptable medical source.   20 C.F.R. § 416.913. Therefore, it is unlikely to have changed the ALJ's decision.  Moreover, the plaintiff has not suggested any good cause for failing to obtain the evidence earlier. Accordingly, Dr. Henderson's opinion also does not provide a basis for remand.

The decision will be affirmed.

This the 10th day of November, 2009.



**Signed By:**

<u>**G. Wix Unthank**</u>

**United States Senior Judge**

11